DONOVAN v. GREENFIELD & T. F. ST. RY. CO.†

(Circuit Court of Appeals, First Circuit. December 13, 1910.)

No. 865.

**1. CARRIERS (§ 281*)—CARRIER OF PASSENGERS—DUTY OF CARE TO INTOXICATED PASSENGER.**

A carrier, which by collecting fare from a person known to be intoxicated accepts him as a passenger, is bound to exercise reasonable care for his safety, having regard to his known condition.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 1095; Dec. Dig. § 281.*]

**2. CARRIERS (§ 383*)—ACTION FOR DEATH OF PASSENGER—QUESTIONS FOR JURY —EJECTION OF INTOXICATED PASSENGER.**

Plaintiff's intestate, on a cold night in winter and when badly intoxicated, boarded an interurban car on defendant's electric line. The conductor collected his fare, but afterwards ejected him at a point three-quarters of a mile from any shelter and where the snow was 2½ feet deep, and he was struck and killed by the returning car. Held, in an action to recover for his death, that, whether or not defendant had the abstract legal right to eject him, it was liable if it failed to exercise reasonable care for his safety in doing so, in view of his known condition, which was a question for the jury.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 383.*]

In Error to the Circuit Court of the United States for the District of Massachusetts.

Action at law by John J. Donovan, administrator, against the Greenfield & Turner's Falls Street Railway Company. Judgment for defendant, and plaintiff brings error. Reversed.

Joseph Madden, for plaintiff in error.
Frederick L. Greene, for defendant in error.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
† Rehearing denied January 19, 1911.

Before COLT and PUTNAM, Circuit Judges, and ALDRICH, District Judge.

ALDRICH, District Judge. In this case the plaintiff's intestate, Cornelius Haggerty, boarded one of the defendant's cars at a place called Miller's Falls, in Massachusetts, about 6 o'clock in the afternoon, on the 14th of February, 1901. The night was cold and stormy, and Haggerty was so badly intoxicated that he staggered. His destination was Turner's Falls. His fare was collected by the conductor, and he rode 3 or 4 miles, and within 1½ or 2 miles of his destination.

He was forcibly ejected, and the evidence tended to show that he was pushed or thrown off by the conductor while the car was moving slowly, and left within 10 or 12 feet of the car track, with his back towards the car. The snow was something like 2½ feet deep above the track, and piled slanting upward and outward therefrom.

At the point where he was left there was no shelter or accommodation, except a waiting shed, open on two sides, and which was three-quarters of a mile from any habitation.

The run from the place where Haggerty was ejected to Turner's Falls required something like 10 or 12 minutes. Soon after its arrival the car was taken in charge by another conductor, for its return trip, who was told by the conductor who ejected Haggerty that he had left the man up there and to look out for him, and he was told this on account of the man's condition as to intoxication. The car, on its return trip, struck Haggerty in the head, and Haggerty died the next morning from the injury.

At the conclusion of the plaintiff's evidence, the defendant moved for a verdict, and the jury was thereupon directed to return a verdict for the defendant. The motion for the verdict is not set out in the record, and therefore the particular ground upon which the verdict was directed does not distinctly appear; but presumably it was upon the ground that the defendant had a right to eject a badly intoxicated person from its car.

We do not think the case necessarily turned upon the question of the defendant's abstract right in that respect.

It is conceded that Haggerty was on the car and that the conductor collected his fare. The defendant, therefore, accepted him as a passenger. Having thus accepted him, the care which the railroad was bound to exercise with respect to his safety would have reference to his known condition, and if he was so badly intoxicated and so badly behaving that his ejection was justifiable, and if he was in a helpless condition, the special duty was upon the defendant to exercise the right of ejection in a reasonable manner.

The general rule of care required of an intoxicated person, in dangerous situations, is the same as that required of a sober person; still, when a carrier, having knowledge of a person's condition in such respect, accepts him as a passenger, and when the relations of carrier and passenger exist, the carrier is bound to exercise greater care with respect to him than if he were sober.

We think the case of Hudson v. Lynn & Boston Railroad Co., 178 Mass. 64, 59 N. E. 647, is in accordance with the cases which involve situations like this, and that case is to the effect that if the right of ejection is exercised in a wrongful or unreasonable manner, and injury follows, it gives the injured party a right of action. The right of action results, of course, not from the fact of ejection, which, in the abstract, is justifiable, but from the fact that the party exercising the legal right unreasonably and carelessly subjects the helpless party to danger and consequential injury.

The Massachusetts case, to which we have referred, is a strong case in favor of the plaintiff, and is so like the case at bar that its reasoning becomes especially pertinent.

That case deals with the situation, there in hand, as though it were manifestly unreasonable and wanton negligence to eject an intoxicated and helpless person in a dark road on a wet night, at a spot distant from human habitation, near the path of cars and other vehicles, and near marshes which adjoin the road on both sides, with no one to care for or protect him.

It is, of course, well understood that badly intoxicated persons may keep going while in a crowd and under excitement, but, if left alone in the darkness and cold, that they are quite likely to fall into a stupor, regardless of any situation of danger; and we think that in this case the plaintiff was entitled to go to the jury upon the question whether the defendant, having reference to the known condition of intoxication, exercised its right of ejection in a reasonable manner. The care required of the defendant, at the time of the ejection, was that degree of care which would be exercised by men of ordinary care and prudence in the enforcement of a legal right in a similar situation, and the similar situation would have reference, of course, to the time, the place, and the man's condition.

While it might not be culpably careless, but, on the contrary, proper, to eject a man in his right mind in such a place in the daytime in warm weather, it might amount to unwarrantable culpability to eject an intoxicated and helpless person at such a place on a cold winter night. The reasonableness of the ejection is something to be determined by a jury in a case like the one before us.

The judgment of the Circuit Court is reversed, the verdict is set aside, the case is remanded to that court for further proceedings not inconsistent with this opinion, and the plaintiff in error recovers his costs of appeal.